## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CLARENCE MADISON TYLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-19-01102-JD |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>ORDER</u>

Before the Court is the United States' Motion to Dismiss Under 12(b)(1) or, in the Alternative, Motion for Partial Summary Judgment ("Motion") [Doc. No. 52]. Plaintiff Clarence Madison Tyler ("Mr. Tyler") responded in opposition ("Response") [Doc. No. 61], and the United States replied ("Reply") [Doc. No. 64]. The Motion addresses Counts 2 and 4 of the Second Amended Complaint [Doc. No. 23].[1] Count 2 is Mr. Tyler's negligence claim against the United States, which takes two forms: (a) negligent arrest, and (b) negligent delay in providing medical assistance. Count 4 is his malicious prosecution claim against the United States.

The government asserts that Tyler's negligence and malicious prosecution claims are jurisdictionally foreclosed under the Federal Tort Claims Act ("FTCA")[2] and that his

---

[1] Count 1, excessive force (assault and battery), is not at issue and remains for bench trial. Count 3 was voluntarily dismissed under Federal Rule of Civil Procedure 41. *See* [Doc. No. 36 at 2].

[2] *See* 28 U.S.C. §§ 1346, 1402, 2671–2680.

negligent medical care claim is factually foreclosed. Absent a waiver, sovereign immunity shields the United States and its agencies from suit. Sovereign immunity is jurisdictional in nature; thus, the Court must decide whether the FTCA waives the United States' immunity for Mr. Tyler's negligence and malicious prosecution claims.

## I.    BACKGROUND

This FTCA case stems from Mr. Tyler's arrest by Veterans Affairs ("VA") law enforcement officers on May 8, 2018, at the Oklahoma City VA Medical Center. VA officers were transporting a patient on a gurney into an elevator when Mr. Tyler, who was at the facility for his own medical care, attempted to intervene with the transport. As a result, Mr. Tyler was arrested and charged with assaulting a federal officer, in violation of 18 U.S.C. § 111(a)(1). Mr. Tyler was acquitted of the conduct by a jury on December 5, 2018.

Mr. Tyler asserts that the VA officers used excessive force in effectuating his arrest and failed to provide him timely medical care, advancing three FTCA claims: (1) assault and battery,[3] (2) negligence, and (3) malicious prosecution. The United States seeks dismissal of Mr. Tyler's negligence and malicious prosecution claims for lack of subject-matter jurisdiction. The United States moves, in the alternative, for summary judgment on Mr. Tyler's negligent delay of medical care claim.

---

[3] Under the FTCA, the correct nomenclature for Mr. Tyler's excessive force claim is assault and battery. *See* 28 U.S.C. § 2680(h) (listing six enumerated torts that may be brought against the United States for law enforcement officer conduct—assault, battery, false imprisonment, false arrest, abuse of process, and malicious prosecution).

II.     <u>**STANDARD OF REVIEW**</u>

"Federal courts are courts of limited jurisdiction" and may exercise jurisdiction only when specifically "authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction takes one of two forms: a facial or a factual attack. *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1148 n.4 (10th Cir. 2015). A facial attack questions the sufficiency of the complaint's allegations. *Id.* In reviewing a facial challenge, a district court must accept the allegations in the complaint as true. *Id.* However, in a factual attack, the moving party may go beyond the allegations contained in the complaint and challenge the facts upon which subject-matter jurisdiction depends. *Id.* A district court may not presume the truthfulness of the complaint's factual allegations when reviewing a factual attack on subject-matter jurisdiction. *Id.* Rather, a court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts. *Id.*

Once challenged, the burden of proving subject-matter jurisdiction is on the plaintiff. *United States ex rel. Stone v. Rockwell Int'l Corp.*, 282 F.3d 787, 797–98 (10th Cir. 2002) (explaining that "conclusory allegations of jurisdiction are not enough"; plaintiff must "show, by a preponderance of the evidence, that jurisdiction exists" (internal quotation marks and citations omitted)); *see also Port City Props. v. Union Pac. R.R. Co.*, 518 F.3d 1186, 1189 (10th Cir. 2008) ("The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction."). The United States presents both facial and factual challenges to subject-matter jurisdiction. When the Court's

3

jurisdiction over a claim is in question, the jurisdictional issue is a threshold matter that the Court must resolve before reaching other matters that may dispose of the claim. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).

Mr. Tyler argues that subject-matter jurisdiction and the merits are intertwined in this case and that the Court should convert the United States' Rule 12(b)(1) motion to a motion for summary judgment. Response at 9.[4] He asserts, without explanation, that resolving liability "is necessary to resolving the issue as to whether [the government] is entitled to sovereign immunity." *See id.*

Reliance on evidence outside the pleadings does not, generally, convert the motion into a Rule 56 motion for summary judgment. *Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1324 (10th Cir. 2002). A court must convert a Rule 12(b)(1) motion into a summary judgment motion or a Rule 12(b)(6) motion to dismiss "when resolution of the jurisdictional question is intertwined with the merits of the case." *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995), *abrogated on other grounds by Cent. Green Co. v. United States*, 531 U.S. 425, 437 (2001). "When subject matter jurisdiction is dependent upon the same statute which provides the substantive claim in the case," *Wheeler v. Hurdman*, 825 F.2d 257, 259 (10th Cir. 1987), and when the "resolution of the jurisdictional question requires resolution of an aspect of the substantive claim," the jurisdictional issue and the merits are considered intertwined. *Pringle v. United States*,

---

[4] The Court uses CM/ECF page numbering from the top of docket filings.

208 F.3d 1220, 1223 (10th Cir. 2000); *see also Harter v. United States*, 344 F. Supp. 3d 1269, 1274 (D. Kan. 2018) (same).

This case involves overlapping questions of sovereign immunity and subject-matter jurisdiction. "In such cases, the 'merits and jurisdiction will sometimes come intertwined.'" *Brownback v. King*, 592 U.S. 209, 217 (2021) (citation omitted). The question presented here is whether the Court has subject-matter jurisdiction over Mr. Tyler's FTCA claims of negligence and malicious prosecution.

> In most cases, a plaintiff's failure to state a claim under Rule 12(b)(6) does not deprive a federal court of subject-matter jurisdiction. . . . However, a plaintiff must plausibly allege all jurisdictional elements. And in the unique context of the FTCA, all elements of a meritorious claim are also jurisdictional. So even though a plaintiff need not *prove* a § 1346(b)(1) jurisdictional element for a court to maintain subject-matter jurisdiction over his claim, a plaintiff must plausibly allege all six FTCA elements not only to state a claim upon which relief can be granted but also for a court to have subject-matter jurisdiction over the claim. That means a plaintiff must plausibly allege that the United States, if a private person, would be liable to the claimant under state law both to survive a merits determination under Rule 12(b)(6) and to establish subject-matter jurisdiction.

*See id.* at 217–18 (internal quotation marks and citations omitted).

Although the United States has submitted evidence in support of its Motion, the Court need not consider that evidence in deciding whether Mr. Tyler has alleged the six elements set forth in the FTCA for this Court to have jurisdiction. Thus, the Court converts the United States' Rule 12(b)(1) Motion into a motion to dismiss under Rule 12(b)(6). *See Blackburn v. United States*, No. 20-8005, 2021 WL 3027979, at *2 (10th Cir. July 19, 2021) (unpublished) (agreeing with that same approach).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a complaint does not need detailed factual assertions, a pleading that offers only "labels and conclusions" or "pleads facts that are merely consistent with a defendant's liability" will not suffice. *Id.* (internal quotation marks and citations omitted). The burden is on the plaintiff to plead factual allegations that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Under this standard, the Court accepts all well-pled factual allegations as true and views the allegations in the light most favorable to the nonmoving party. *Peterson v. Grisham*, 594 F.3d 723, 727 (10th Cir. 2010). Conclusory statements, however, are not entitled to the assumption of truth and courts are free to disregard them. *See Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012). The Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in his complaint, but the elements of each cause of action help to determine whether the plaintiff has set forth a plausible claim. *Id.* at 1192. "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (internal quotation marks and citation omitted).

6

III.   **DISCUSSION**

Under the doctrine of sovereign immunity, the United States is immune from suit unless it consents to be sued. *United States v. Mitchell*, 445 U.S. 535, 538 (1980). Waiver of sovereign immunity "'must be unequivocally expressed.'" *Id.* (quoting *United States v. King*, 395 U.S. 1, 4 (1969)). Absent clear congressional consent, there is no jurisdiction to entertain suits against the United States. *See id.*

The FTCA constitutes a limited waiver of the United States' sovereign immunity from private suit. 28 U.S.C. § 1346(b); *see also Est. of Trentadue ex rel. Aguilar v. United States*, 397 F.3d 840, 852 (10th Cir. 2005). Under the FTCA, the United States can be held "'liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment.'" *Lopez v. United States*, 823 F.3d 970, 975–76 (10th Cir. 2016) (quoting *United States v. Orleans*, 425 U.S. 807, 813 (1976)).[5]

"A claim is actionable if it alleges the six elements of § 1346(b), which are that the claim be:

'[1] against the United States, [2] for money damages, . . . [3] for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable

---

[5] Under the FTCA, the United States is liable "in the same manner and to the same extent as a private individual under like circumstances," 28 U.S.C. § 2674, and "in accordance with the law of the place where the act . . . occurred." *Id.* § 1346(b)(1). Thus, Oklahoma substantive law and federal procedural law apply to the Court's analysis. *See also Cannon v. United States*, 338 F.3d 1183, 1192 (10th Cir. 2003) (noting that "the FTCA mandates application of state law to resolve questions of substantive liability").

> to the claimant in accordance with the law of the place where the act or omission occurred.'"

*Brownback*, 592 U.S. at 212 (quoting § 1346(b)). Thus, the government is not liable under the FTCA unless state law recognizes a comparable liability for private persons. *See* 28 U.S.C. § 1346(b)(1); *United States v. Olson*, 546 U.S. 43, 46 (2005) (explaining that the FTCA waives the federal government's sovereign immunity only where local law would make a private person liable in tort, not where local law would make a state or municipal entity liable, even where uniquely governmental functions are at issue); *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1117 (10th Cir. 2004) ("[r]ecognizing that the United States is seldom situated identically to private parties," and explaining that the "'like circumstances' inquiry requires only that the United States be analogized to a similarly situated private party") (citation omitted). Thus, a plaintiff's failure to identify an appropriate private party analogue deprives the court of jurisdiction to hear those claims. *See Pappas v. United States*, 617 F. App'x 879, 882 (10th Cir. 2015) (unpublished) (explaining that the party asserting jurisdiction "bears the burden of proof to establish that the court possesses subject-matter jurisdiction based upon analogous Oklahoma private liability") (citing *Miller v. United States*, 710 F.2d 656, 662 (10th Cir. 1983)).

A.    **The Court does not have subject-matter jurisdiction over Mr. Tyler's negligent arrest claim.**

Mr. Tyler alleges that VA law enforcement officers owed him "a duty regarding the safety and well-being of his person," and that they breached this duty "while acting in the course of and within the scope of their employment." [Doc. No. 23 ¶ 32]. With

respect to his arrest, Mr. Tyler alleges that one officer "stormed out of the elevator, grabbed [him], and forcefully pushed him into a nearby stairwell." *See id.* ¶ 16. While in the stairwell Mr. Tyler alleges that VA police officers "choked [his] neck," "slammed him on the ground," and pulled his chemotherapy port "out of his chest." *See id.* ¶ 17.

Regarding Mr. Tyler's negligent arrest claim, the United States asserts that: (1) Mr. Tyler has failed to establish an appropriate private party analogue for his negligent arrest claim; (2) *Morales v. City of Oklahoma City ex rel. Oklahoma City Police Dep't*, 230 P.3d 869 (Okla. 2010) does not supply the proper private party analogue; (3) *Morales* did not alter the long-standing principle that intentional conduct under Oklahoma law does not give rise to a negligence claim; and (4) even if *Morales* was applicable, negligent arrest is not an enumerated tort under the FTCA that can be brought against the United States for law enforcement officer conduct. Motion at 17–25. In response, Mr. Tyler cites to *Morales* and argues its application to the alleged facts, but he does not address the arguments made by the United States in its Motion. *See* Response at 10–11.

In *Morales*, the Oklahoma Supreme Court considered whether the district court erred in granting summary judgment to the City of Oklahoma City ("the City") based on three statutory exemptions created by the Oklahoma Governmental Tort Claims Act. 230 P.3d at 873–74. Its consideration occurred in the context of a city police officer effectuating an arrest of a middle school student, and the student's subsequent action to recover damages for injuries sustained during the arrest. *See id.* at 873. In other words, it occurred in the context of municipal liability for an officer-employee's actions.

The initial petition brought by the student's mother alleged that the officer, acting within his scope of employment, had used excessive force, acted negligently, intentionally, maliciously, and in reckless disregard of her daughter's safety. *Id.* She amended her petition, removing all descriptive allegations of the officer's conduct and "replacing them with a non-specific allegation of tort-inflicted damage to [the student] caused by [the officer's] actions taken within the scope of his employment." *Id.* On appeal, the Oklahoma Supreme Court determined that none of the three exemptions cited shielded the City from liability. *See id.* at 875. Additionally, it concluded that the existence of triable issues of fact precluded summary judgment. *See id.* at 878. Because the City did "not dispute that it owed a duty of care to [the student], [the court] assume[d] for purposes of [the] decision, without deciding, that a police officer owes a negligence-based duty of care to an arrestee to protect the arrestee from injury." *Id.* The court noted that "some jurisdictions reject negligence as a theory of liability for the use of excessive force by law enforcement," but explained it was not necessary "in this case . . . to choose between delictual theories." *See id.* at n.35 (collecting cases).

The Court agrees with the United States that *Morales* does not supply the proper private party analogue for Mr. Tyler's negligent arrest claim because *Morales* involved municipal liability, and not a local law making a *private person* liable in tort.[6]

---

[6] When the Court previously considered a motion to dismiss at the outset of the case, though it had a hearing, it did not have the benefit of briefing on *Morales*. Upon further reflection and analysis of the law, the Court agrees with the United States that *Morales* is inapposite here. Thus, to the extent there is any conflict in the Court's oral ruling at the outset of the case and this ruling, this ruling controls.

The United States Supreme Court in *United States v. Olson* addressed this exact issue. 546 U.S. 43 (2005). In *Olson*, two injured mine workers sued the United States asserting that the negligence of federal mine inspectors led to a serious accident at an Arizona mine. *See id.* at 45. The district court dismissed, in part, finding that the miners' allegations were insufficient to show that Arizona law would impose liability upon a private person in similar circumstances. *Id.* The Ninth Circuit reversed, reasoning that: (1) where unique governmental functions are at issue, the FTCA "waives sovereign immunity if a state or municipal entity would be subject to liability under the law where the activity occurred"; and (2) there is no private-sector analogue for mine inspections because federal mine inspections are regulatory in nature and involve a unique governmental function. *Id.* (internal quotation marks and citations omitted). The circuit concluded that "Arizona law would make 'state and municipal entities' liable in the circumstances alleged," and as a result, the FTCA waived the United States' sovereign immunity. *Id.* (citation omitted).

The Supreme Court, however, disagreed with the Ninth Circuit's reasoning, finding the first premise "too broad" and the second "too narrow" under a reading of the FTCA. *See id.* at 45–46. The first premise read "into the [FTCA] something that is not there." *Id.* at 45. The FTCA waives sovereign immunity "under circumstances where the United States, if a *private person*, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1) (emphasis added). It does not waive sovereign immunity where the United States, if a state or municipal entity, would be liable. *Olson*, 546 U.S. at 45–46. The Court explained that its

"cases have consistently adhered to this 'private person' standard." *See id.* at 46 (collecting cases). The second premise rested upon a reading of the FTCA that was "too narrow." *See id.* To that end, the Court concluded that "like circumstances" do not restrict a court's inquiry to the "same circumstances," and that the circuit should have looked for a similar analogy. *Id.* at 46–47.

Here, Mr. Tyler bears the burden of identifying an appropriate private party analogue under Oklahoma law. *See Pappas*, 617 F. App'x at 882. He has "failed to demonstrate that Oklahoma would impose . . . liability on a private individual under 'like circumstances' to those described in [his Second Amended Complaint], as is jurisdictionally required by § 1346(b) and § 2674." *See id.* at 883 (explaining that a federal prisoner failed to identify any Oklahoma law that made conduct by a private person akin to what he alleged in his complaint as a violation of an Oklahoma duty of care owed to prisoners). Mr. Tyler offers no similar analogy in his Response or Second Amended Complaint, nor does he address in his Response whether this Court has subject-matter jurisdiction over his negligent arrest claim. *See* Response at 10–11; *see also Reece v. United States*, No. CIV-14-734-M, 2015 WL 4937436, at *3 (W.D. Okla. Aug. 19, 2015) (concluding that the plaintiff had confessed the issue where she did not address in her response the court's subject-matter jurisdiction over her negligent use of excessive force claim). Mr. Tyler has not pled facts sufficient to justify the imposition of liability under ordinary state-law principles, and his conclusory reference to the elements of 28 U.S.C. § 1346(b) in his Second Amended Complaint is insufficient to waive the United States' sovereign immunity. *See* [Doc. No. 23 ¶ 1].

The Oklahoma Supreme Court in *Morales* took the parties where it found them— that is, not disputing the absence of a tort claim and in the context of municipal liability for police officer conduct under the Oklahoma Governmental Tort Claims Act. *See Morales*, 230 P.3d at 878 & n.35; *see also* discussion *supra* at 9–10. Additionally, the plaintiff there did not plead a specific tort; thus, the court concluded it did not matter "what nomenclature [was] assigned to the plaintiff's claim." *Morales*, 230 P.3d at 878, n.35. Conversely, here, nomenclature is important when determining whether a private party analogue to the VA officers' actions exists.

Mr. Tyler cites no legal authority in support of a claim for negligent arrest under Oklahoma law, and the Court has not found any legal authority indicating such a claim is available under Oklahoma law. Both before and after *Morales*, the Oklahoma Supreme Court has consistently and long recognized that intentional conduct cannot give rise to a negligence claim. *See, e.g.*, *Broom v. Wilson Paving & Excavating, Inc.*, 356 P.3d 617, 629 (Okla. 2015) (explaining that "[t]he very nature of negligence as a basis of recovery is inconsistent with activity that would produce an 'expected or intended' injury"); *Kile v. Kile*, 63 P.2d 753, 755 (Okla. 1936) (recognizing that "[n]egligence, in its generally accepted meaning, has in it no element of willfulness; but involves a state of mind which is negative; a state of mind in which the person fails to give attention to the character of his acts or omissions or to weigh their probable or possible consequences"); *St. Louis & S. F. R. Co. v. Boush*, 174 P. 1036, 1040 (Okla. 1918) (explaining that negligence "exclude[s] the idea of intentional wrong" and that when "a person wills to do an injury, he ceases to be negligent"). Likewise, the Tenth Circuit post-*Morales* has concluded that

intentional conduct—even by police officers—cannot give rise to a negligence claim under Oklahoma law. *See, e.g., Redd v. City of Okla. City ex rel. City of Okla. City Police Dep't*, No. 20-6145, 2021 WL 3909982, at *5 (10th Cir. Sept. 1, 2021) (unpublished) (explaining that "*Broom* instructs that under Oklahoma law intentionality is incompatible with negligence"; thus, the plaintiff could not proceed on a negligence theory for her assault and battery claims against the police officers).

This distinction between intentional and negligent conduct is also critical in the FTCA context. Thus, the Court must determine whether the conduct alleged is negligent, which is generally permissible under 28 U.S.C. §§ 1346(b)(1) and 2674, or intentional, in which case the Court must look to 28 U.S.C. § 2680(h) to determine if a cause of action exists.

Section 2680(a) through (n) excepts claims from the FTCA's waiver of sovereign immunity in § 1346(b)(1). *See* 28 U.S.C. § 2680; *see also Garling v. U.S. Env't Prot. Agency*, 849 F.3d 1289, 1294 (10th Cir. 2017) ("When an exception applies, sovereign immunity remains, and federal courts lack jurisdiction."). The first clause of § 2680(h), known as the "intentional tort exception," excludes "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights[.]" 28 U.S.C. § 2680(h). Although § 2680(h) maintains sovereign immunity for eleven enumerated torts in its first clause, its second clause waives sovereign immunity for six intentional torts when they arise from "acts or omissions" of federal "law enforcement officers." *See id.*; *see also Garling*, 849 F.3d at 1295–96. "'Known as the 'law enforcement proviso,' this

14

provision extends the waiver of sovereign immunity to claims for six intentional torts'—
assault, battery, false imprisonment, false arrest, abuse of process, and malicious
prosecution." *Garling*, 849 F.3d at 1296 (quoting *Millbrook v. United States*, 569 U.S.
50, 52–53 (2013)).

In determining whether Mr. Tyler's claims fall within the law enforcement
proviso, the Court looks to the substance of his claims and not how he labeled them in his
Second Amended Complaint. *See Garling*, 849 F.3d at 1298 (noting that "[t]he Sixth
Circuit put it well: a plaintiff may not 'recast a negligence tort as an intentional tort to
take advantage of the law enforcement exception to § 2680(h)'" and quoting *Milligan v.
United States*, 670 F.3d 686, 696 (6th Cir. 2012)). Conversely, a plaintiff cannot frame an
intentional assault and battery claim as one sounding in negligence to sidestep the
§ 2680(h) jurisdictional bar to intentional torts against non-law enforcement and
investigative federal officers. *See, e.g.*, *United States v. Shearer*, 473 U.S. 52, 55 (1985);
*Blackburn*, 2021 WL 3027979, at *3–4; *Satterfield v. United States*, 788 F.2d 395, 399–
400 (6th Cir. 1986).

The same logic applies here. Mr. Tyler cannot recast his claims to try and fit
within the statutory framework of the FTCA. "[A] mere allegation of negligence does not
turn an intentional tort into negligent conduct." *See Blackburn*, 2021 WL 3027979, at *4
(internal quotation marks and citation omitted). Here, the conduct underlying Mr. Tyler's
negligent arrest claim in Count 2 supports an intentional tort of assault and battery, which
he already alleges in Count 1. *See, e.g.*, *Ganas v. Tselos*, 11 P.2d 751, 755 (Okla. 1932)
(although litigants can allege different theories arising from one event, "[i]n determining

the character of the action, we look to the substance of the entire pleading, and not to the mere formal language in which it is expressed"); *Kimberly v. DeWitt*, 606 P.2d 612, 614 (Okla. Civ. App. 1980) (concluding that even where a "petition alleges 'gross negligence and violence,'" the plaintiff pleads "a cause of action for assault and battery" if "the substance of the pleading states only a cause of action for assault and battery"); *see also Redd*, 2021 WL 3909982, at *4–5 (agreeing with the district court that the "negligence and gross negligence" claims framed in the complaint were properly construed as claims sounding in "assault and battery"). Additionally, Mr. Tyler identifies no private party analogue under Oklahoma law for his negligent arrest claim to meet the parameters in §§ 1346(b)(1) and 2674. Accordingly, the Court lacks subject-matter jurisdiction over Mr. Tyler's negligent arrest claim.

**B.      The Court does not have subject-matter jurisdiction over Mr. Tyler's negligent delay of medical care claim.**

Mr. Tyler alleges that VA law enforcement officers owed him "a duty regarding the safety and well-being of his person," and that they breached this duty "while acting in the course of and within the scope of their employment." [Doc. No. 23 ¶ 32]. He alleges he was "detained and escorted to a holding tank where he remained for several hours without medical attention." *See id.* ¶ 19.

The United States asserts that (1) Mr. Tyler has failed to meet his burden of identifying an appropriate private party analogue for his negligent delay of medical care claim; and (2) Mr. Tyler has failed to present evidence in support of this claim to survive summary judgment. Motion at 25–32. Because the United States' first argument is

dispositive to this claim, the Court does not address the second relating to summary judgment. The Court lacks subject-matter jurisdiction over Mr. Tyler's negligent delay of medical care claim because Mr. Tyler has not identified a private party analogue under Oklahoma law.

Mr. Tyler asserts that "it goes without saying that when a police officer takes a pre-trial detainee into custody, there exists a duty to protect the detainee from injury." Response at 13. In support, Mr. Tyler cites to one sentence in an unpublished memorandum and order from the District of Kansas, in which the court, without application to a private party analogue under Kansas law, generally asserted that the plaintiff's "action for negligent denial of medical treatment while in federal detention sounds in tort and is properly brought under the FTCA." *Frank Martinez v. United States*, Case No. 05-cv-03192-SAC, at [Doc. No. 19 at 7] (D. Kan. May 23, 2006). The court ultimately dismissed that case as time barred and for lack of subject-matter jurisdiction because the plaintiff did not present his claim to the appropriate federal agency within the time limits set by 28 U.S.C. § 2401(b). *See id.* at [Doc. Nos. 19–21]. That case is inapposite here and does not provide an appropriate private party analogue under Oklahoma law.

Mr. Tyler also cites to several Tenth Circuit opinions that are not on point. In *Estate of Hocker v. Walsh*, a pretrial detainee committed suicide while detained at the Cleveland County Detention Center. 22 F.3d 995, 996 (10th Cir. 1994). Her father filed a 42 U.S.C. § 1983 action against the sheriff and the county, asserting that they were deliberately indifferent to his daughter's serious medical needs under the Fourteenth

Amendment. *See id.* On appeal, the Tenth Circuit affirmed the district court's grant of summary judgment in favor of the sheriff and the county, finding that the father's claim that defendants were deliberately indifferent to his daughter's serious medical needs was without factual support. *See id.* at 1000.

Similarly, *Requena v. Roberts* involved a pro se prisoner's § 1983 action against prison employees alleging, among other violations, a violation of his Eighth Amendment rights based on the denial of medical care. 893 F.3d 1195, 1215 (10th Cir. 2018). On appeal, the Tenth Circuit affirmed the district court's dismissal of this claim. *See id.*

Finally, *McCowan v. Morales* concerned an arrestee's § 1983 action against a police officer asserting that the officer used excessive force while driving him to the police station after arresting him for drunk driving and that the officer was deliberately indifferent to his serious medical needs—injured shoulders—while the officer kept him at the police station, in violation of the Fourth and Fourteenth Amendments. 945 F.3d 1276, 1279 (10th Cir. 2019). On appeal, the Tenth Circuit affirmed the district court's decision to deny the officer qualified immunity on both claims. *See id.* at 1294.

None of these cases are relevant, however, because Mr. Tyler has not alleged constitutional tort claims, nor do they supply an appropriate party analogue under Oklahoma law. Accordingly, the Court lacks subject-matter jurisdiction over Mr. Tyler's negligent delay of medical care claim.

**C.    To the extent Mr. Tyler raises a claim for malicious prosecution based on the United States' decision to prosecute him, the Court lacks subject-matter jurisdiction over his claim because the United States retains sovereign immunity under the discretionary function exception to the FTCA.**

Mr. Tyler alleges that he "was falsely charged with a crime" and that VA officers "falsely stated in their official reports that [Mr. Tyler] tried to grab an officer's gun belt, and that [he] was combative." [Doc. No. 23 ¶¶ 22, 23]. Additionally, Mr. Tyler alleges that the United States "knew its reasons for bringing criminal charges against [him] lacked probable cause and was not in order to bring him to justice, but was motivated by their own malice after receiving notice from [Mr. Tyler's] attorney that he would be filing a lawsuit against them." *See id.* ¶ 24.

The United States asserts that this claim falls within the discretionary function exception to the FTCA, found in 28 U.S.C. § 2680(a), and that the Court lacks subject-matter jurisdiction over this claim. Motion at 32–38. In his Response, Mr. Tyler narrows this claim by conceding that the United States' decision to prosecute him is entitled to the discretionary function exception. Response at 18. However, he asserts that the VA officers falsified records and gave false testimony in his misdemeanor criminal trial and that this conduct does not fall within the discretionary function exception. *See id.* He cites to *Crow v. United States*, 659 F. Supp. 556 (D. Kan. 1987), for support. In reply, the United States asserts that Mr. Tyler's "narrower 'false testimony' claim" is "a civil perjury claim for which there is no private-party analogue under Oklahoma law" because it is protected by absolute immunity. Reply at 5. Additionally, the United States asserts

that the VA officers' incident reports are also immune for the same reasons, and that the

facts in *Crow* are distinguishable from the allegations in this case. *See id.* at 7–8.

"The liability of the United States under the FTCA is subject to the various

exceptions contained in § 2680, including the 'discretionary function' exception at issue

here." *United States v. Gaubert*, 499 U.S. 315, 322 (1991).[7] That exception provides that

the United States is not liable for

> [a]ny claim based upon an act or omission of an employee of the
> Government, exercising due care, in the execution of a statute or regulation,
> whether or not such statute or regulation be valid, or based upon the
> exercise or performance or the failure to exercise or perform a discretionary
> function or duty on the part of a federal agency or an employee of the
> Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). It covers acts that are discretionary in nature, "acts that 'involv[e] an

element of judgment or choice.'" *Gaubert*, 499 U.S. at 322 (quoting *Berkovitz v. United

States*, 486 U.S. 531, 536 (1988)). The "nature of the conduct, rather than the status of the

actor" governs whether the exception applies. *Berkovitz*, 486 U.S. at 536 (internal

quotation marks and citation omitted).

If the discretionary function exception applies, "the United States retains its

sovereign immunity and the [Court] lacks subject matter jurisdiction" over the claim. *See

Domme v. United States*, 61 F.3d 787, 789 (10th Cir. 1995). Thus, application of the

---

[7] A plaintiff under the FTCA must prove that sovereign immunity has been
waived. Proof of waiver, however, may not be determinative because the FTCA contains
several exceptions to its general waiver of sovereign immunity. *See* 28 U.S.C. § 2680; *see
also S.E.B.M. ex rel. Felipe v. United States*, 659 F. Supp. 3d 1249, 1259 (D.N.M. 2023).
If an exception applies, then "sovereign immunity remains, and federal courts lack
jurisdiction." *Garling*, 849 F.3d at 1294.

exception "presents a threshold jurisdictional determination." *See id.* "Because the

discretionary function exception is jurisdictional, the burden is on [Mr. Tyler] to prove

that it does not apply." *See Martinez v. United States*, 822 F. App'x 671, 676–77 (10th

Cir. 2020) (unpublished) (quoting *Hardscrabble Ranch, L.L.C. v. United States*, 840 F.3d

1216, 1220 (10th Cir. 2016)).

The Tenth Circuit applies the two-step framework from *Berkovitz* in determining

whether the exception applies. *See Domme*, 61 F.3d at 789–90 (citing *Berkovitz*, 486 U.S.

at 536). First, the action must be "'a matter of choice for the acting employee.'" *See id.* at

789 (quoting *Berkovitz*, 486 U.S. at 536). Second, the employee's judgment must be "'of

the kind that the discretionary function exception [to liability] was designed to shield.'"

*See id.* at 790 (quoting *Berkovitz*, 486 U.S. at 536). The exception was designed to

"prevent judicial second-guessing of legislative and administrative decisions grounded in

social, economic, and political policy." *Berkovitz*, 486 U.S. at 536–37 (internal quotation

marks and citation omitted). To that end, the exception "insulates the [g]overnment from

liability if the action challenged in the case involves the permissible exercise of policy

judgment." *Id.* at 537 (explaining that the "exception, properly construed, therefore

protects only governmental actions and decisions based on considerations of public

policy").

The United States' prosecution of Mr. Tyler satisfies both prongs. *See, e.g.*,

*S.E.B.M. ex rel. Felipe v. United States*, 659 F. Supp. 3d 1249, 1271–73 (D.N.M. 2023)

(concluding that the federal government's decision to prosecute a noncitizen child's

father for improper entry was conduct protected from liability under the discretionary

function exception to the FTCA's waiver of sovereign immunity in child's FTCA action

to recover for emotional distress allegedly caused by her separation from her father

following his arrest). The federal government, acting through the Attorney General and

the United States Attorneys, "retain[s] broad discretion to enforce the Nation's criminal

laws," *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (internal quotation marks

and citations omitted), and to "choose what criminal cases to prosecute." *S.E.B.M.*, 659 F.

Supp. 3d at 1271 (stating that "the government, acting through federal prosecutors, has

wide latitude to enforce federal criminal law"). Thus, so long as the United States' action

did not violate the Constitution, its decision to prosecute Mr. Tyler is discretionary under

the first prong. *Armstrong*, 517 U.S. at 464 ("Of course, a prosecutor's discretion is

'subject to constitutional constraints'" (quoting *United States v. Batchelder*, 442 U.S.

114, 125 (1979)). Here, Mr. Tyler does not assert that the government lacked discretion

because its conduct was unconstitutional, but rather he concedes that the United States is

entitled to the discretionary function exception for its decision to prosecute him. *See*

Response at 18.

Additionally, the United States' decision to prosecute Mr. Tyler is "also the kind

of discretionary decision that the exception is supposed to protect." *See S.E.B.M.*, 659 F.

Supp. 3d at 1272 (stating that the "decision to prosecute is perhaps the prototypical

discretionary function the exception is intended to protect from liability"). The Supreme

Court has explained that the government's "broad discretion [as to whom to prosecute]

rests largely on the recognition that the decision to prosecute is particularly ill-suited to

judicial review." *Wayte v. United States*, 470 U.S. 598, 607 (1985). This is, in part, due to

22

considerations of public policy that factor into that analysis, including "the strength of the case, the prosecution's general deterrence value, the [g]overnment's enforcement priorities, and the case's relationship to the [g]overnment's overall enforcement plan." *See id.* at 607; *see also Smith v. United States*, 375 F.2d 243, 247 (5th Cir. 1967) (identifying other relevant factors, including "the likelihood of conviction, . . . degree of criminality, the weight of the evidence, the credibility of witnesses, precedent, policy, the climate of public opinion, timing, and the relative gravity of the offense"). Accordingly, the second prong of *Berkovitz* is satisfied. To the extent Mr. Tyler raises a claim for malicious prosecution based on the United States' decision to prosecute him, the Court lacks subject-matter jurisdiction over his claim.

**D.     The Court does not have subject-matter jurisdiction over Mr. Tyler's "false testimony" malicious prosecution claim.**

With respect to the remaining portion of Mr. Tyler's malicious prosecution claim, he asserts that the "United States has . . . stepped into the shoes of its VA [p]olice [o]fficers" and that the VA officers "gave false testimony and made false and conflicting statements in their respective police reports." Response at 19, 20. The United States asserts that there is no private party analogue under Oklahoma law for Mr. Tyler's "false testimony" claim, and that such a claim is foreclosed under Oklahoma law. Reply at 5.

Mr. Tyler bears the burden of identifying an appropriate private party analogue. *See Pappas*, 617 F. App'x at 882. However, he cannot show that Oklahoma would impose liability on his false testimony claim because Oklahoma offers "participants in judicial proceedings an absolute immunity against later civil suits grounded in litigation

conduct." *See Knight v. Mooring Cap. Fund, LLC*, 749 F.3d 1180, 1185 (10th Cir. 2014) (citing *Patel v. OMH Med. Ctr., Inc.*, 987 P.2d 1185, 1202 (Okla. 1999) ("To the extent [the plaintiff's] petition relies on perjurious testimony as the basis of her claim for damages, whether denominated perjury, fraud, deceit, or 'prima facie tort,' the petition fails to state a claim.")). Rather, remedies for "litigation-related misconduct" are to be pursued in the litigated case, or through bar disciplinary or criminal proceedings. *Patel*, 987 P.2d at 1202–03; *see also Cooper v. Parker-Hughey*, 894 P.2d 1096, 1098–1101 (Okla. 1995) (concluding that no civil "action lies to recover damages caused by perjury" and that witnesses in criminal prosecutions are entitled to absolute immunity from liability for damages resulting from their testimony).

Oklahoma also "recognize[s] an absolute privilege for communications made preliminary to proposed judicial or quasi-judicial proceedings in favor of attorneys, parties and witnesses." *Kirschstein v. Haynes*, 788 P.2d 941, 945 (Okla. 1990), *superseded by rule on other grounds by Dani v. Miller*, 374 P.3d 779, 785 n.1 (Okla. 2016) (explaining that state appellate rules have changed regarding treatment of errors not presented by the petition in error and noting that *Kirschstein* was decided under the prior rules). *See also Pacific Emps. Ins. Co. v. Adams*, 168 P.2d 105, 107 (Okla. 1946) (concluding that statements made in a physician's report attached to a pleading with the State Industrial Commission are immune from a claim of libel); *Hughes v. Bizzell*, 117 P.2d 763, 765 (Okla. 1941) (explaining that statements made at a session before the Board of Regents to determine whether an employee's discharge should be upheld are

absolutely privileged); *Dickerson v. Crozier*, 261 P. 545, 547 (Okla. 1927) (concluding that statements made in a complaint filed with the city police court are immune).

Thus, to the extent Mr. Tyler relies on the VA officers' testimony or incident reports for his malicious prosecution claim, he has failed to show a proper private party analogue under Oklahoma law.[8]

## IV.    CONCLUSION

Based on its analysis above, the Court concludes it lacks subject-matter jurisdiction over Mr. Tyler's negligence and malicious prosecution claims. Consequently, the Court GRANTS the United States' Motion to Dismiss Under 12(b)(1) or, in the Alternative, Motion for Partial Summary Judgment [Doc. No. 52] to the extent it seeks dismissal of those claims for lack of jurisdiction and as converted to a Rule 12(b)(6) motion by the Court. Therefore, the Court DISMISSES WITHOUT PREJUDICE Mr. Tyler's negligence and malicious prosecution claims in Counts 2 and 4 for lack of

---

[8] Mr. Tyler's allegations, as set forth in the Second Amended Complaint, differ significantly from the facts in *Crow v. United States*, 659 F. Supp. 556, 572 (D. Kan. 1987), which involved much more "than mere false testimony before the grand jury" where the lead postal inspector played "an active part in bringing about the indictment." That case arose from an undercover investigation by the Postal Inspection Department that used staged facts, false identities, forged documents, surreptitious recorded conversations, false police reports, and false testimony before the grand jury. The court there concluded that most of the postal inspectors involved who wrote false statements in their reports did not "actively participate[] in the prosecution so as to render the government liable in malicious prosecution for their conduct." *See id.* Mr. Tyler does not allege that the VA officers were involved "in an active enough role" to "initiate" the criminal proceeding. *See id.* at 571–72. Rather, he alleges that former Assistant United States Attorney William E. Farrior "pursue[d]" the case against him. [Doc. No. 23 ¶ 21].

subject-matter jurisdiction.[9] Mr. Tyler's excessive force (assault and battery) claim in Count 1 is the sole claim remaining for bench trial.

IT IS SO ORDERED this 29th day of April 2024.

JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE

---

[9] *See Warren v. United States*, 244 F. Supp. 3d 1173, 1217 (D.N.M. 2017) (noting that the "Tenth Circuit has emphasized that all dismissals for lack of jurisdiction, including those for a failure to establish a waiver of sovereign immunity under the FTCA, should be without prejudice"); *see also Mecca v. United States*, 389 F. App'x 775, 780–81 (10th Cir. 2010) (unpublished) (remanding with instructions to enter dismissal of the FTCA claims without prejudice); *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216 (10th Cir. 2006) (explaining that "[a] longstanding line of cases from this circuit holds that where the district court dismisses an action for lack of jurisdiction, as it did here, the dismissal must be without prejudice").