IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CLARENCE MADISON TYLER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-19-01102-JD |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

Before the Court is the United States' Motion in Limine ("Motion") [Doc. No. 78]. Plaintiff Clarence Madison Tyler ("Mr. Tyler") responded in opposition ("Response") [Doc. No. 85]. The United States seeks to exclude the testimony of Mr. Tyler's wife and pastor as irrelevant, duplicative, cumulative, and a waste of the Court's time. Additionally, the United States seeks to limit the testimony of Dr. Bautista-Gutierre to lay testimony as Mr. Tyler did not notice her as an expert under Federal Rule of Civil Procedure 26(a). For the reasons stated below, the Court grants in part, denies in part, and reserves in part the Motion.

**I.   BACKGROUND**

Mr. Tyler's assault and battery claim (Count 1) brought under the Federal Tort Claims Act ("FTCA") is the sole claim remaining for bench trial.[1] This FTCA case stems from Mr. Tyler's arrest by Veterans Affairs ("VA") law enforcement officers on May 8,

---

[1] There is no right to a jury trial under the FTCA. *See* 28 U.S.C. § 2402; *United States v. Neustadt*, 366 U.S. 696, 701 n.10 (1961).

2018, at the Oklahoma City VA Medical Center. VA officers were transporting a patient on a gurney into an elevator when Mr. Tyler, who was at the facility for his own medical care, attempted to intervene with the transport. As a result, Mr. Tyler was arrested and charged with assaulting a federal officer, in violation of 18 U.S.C. § 111(a)(1). Mr. Tyler was acquitted of the conduct by a jury on December 5, 2018.

Mr. Tyler asserts that the VA officers used excessive force in effectuating his arrest and advances a FTCA claim for assault and battery. Mr. Tyler intends to call his wife, Rhonda Tyler, and his pastor, Robert Taylor, to "testify as to [Mr. Tyler's] emotional distress and pain resulting from the May 8, 2018" incident. [Doc. No. 80 at 11].[2] Additionally, he intends to call Dr. Bautista-Gutierre, his treating physician, as a fact witness. Response at 3. Mr. Tyler anticipates that Dr. Bautista-Gutierre will testify in her capacity as his treating physician about the "injuries [Mr. Tyler] sustained at the hands of VA police," "[Mr. Tyler's] complaints of the May 8, 2018" incident, and his fear in "attending his medical appointments at the VA due to continuous staring by police officers involved in the incident." [Doc. No. 80 at 11]. Dr. Bautista-Gutierre is also expected to testify that, as a result, she permitted Mr. Tyler "to treat via Zoom."[3] [Doc. No. 80 at 11].

---

[2] Mr. Tyler noticed his wife's and pastor's anticipated testimony in his discovery responses on January 27, 2022, in his Final Witness and Exhibit List filed on April 22, 2022, and in the Final Pretrial Report filed on September 30, 2024. *See* [Doc. Nos. 85-1 at 11–12, 48 at 3, and 80 at 11]. The United States elected not to depose either witness. Response at 2.

[3] Mr. Tyler noticed Dr. Bautista-Gutierre as a fact witness in his Final Witness and Exhibit List filed on April 22, 2022, and in the Final Pretrial Report filed on September

...

## II.     LEGAL STANDARD

Although motions in limine are not formally recognized under the Federal Rules of Evidence, district courts have long recognized the potential utility of pretrial rulings under the Court's inherent power to manage the course of trial proceedings. *See Luce v. United States*, 469 U.S. 38, 41 n.4 (1984) (citing generally Fed. R. Evid. 103(c)). A motion in limine presents the trial court with the opportunity "to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Bond v. Bd. of Cnty. Comm'rs of Muskogee Cnty.*, No. 20-7067, 2023 WL 3589081, at *10 (10th Cir. May 23, 2023) (unpublished) (quoting *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (internal quotation marks and citation omitted)).

Although such pretrial rulings can save time and avoid interruptions at trial, "a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Wilkins v. Kmart Corp.*, 487 F. Supp. 2d 1216, 1218 (D. Kan. 2007); *see also Richardson v. Mo. Pac. R.R. Co.*, 186 F.3d 1273, 1276 (10th Cir. 1999) (explaining that weighing of evidence under Rule 403 is normally "done against a backdrop of the actual evidence at trial," but recognizing that some "evidentiary issues are akin to questions of law, and the decision to admit such evidence is not dependent upon the character of the other evidence admitted at trial" (citation omitted)). As such, a court

---

30, 2024. *See* [Doc. Nos. 48 at 3, 80 at 11]. Mr. Tyler did not notice Dr. Bautista-Gutierre as an expert witness, and the time to do so expired on March 8, 2022. *See* [Doc. No. 42 at 1].

should generally "reserve its rulings for those instances when the evidence plainly is inadmissible on all potential grounds, and it should typically defer rulings on relevancy and unfair prejudice objections until trial when the factual context is developed." *Wilkins*, 487 F. Supp. 2d at 1218–19 (citations omitted); *see also Wheatridge Off., LLC v. Auto-Owners Ins. Co.*, 578 F. Supp. 3d 1187, 1201 (D. Colo. 2022).[4]

Some in limine rulings, such as relevance, are preliminary in nature because the required balancing may be reassessed as the evidence is presented. Accordingly, "[a] district court 'may change its ruling at any time for whatever reason it deems appropriate.'" *United States v. Martinez*, 76 F.3d 1145, 1152 (10th Cir. 1996) (quoting *Jones v. Stotts*, 59 F.3d 143, 146 (10th Cir. 1995)); *see also Luce*, 469 U.S. at 41–42 ("The ruling is subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the defendant's proffer. Indeed even if

---

[4] As noted, this case is scheduled for a bench trial as there is no right to a jury trial in FTCA cases. Therefore, some courts have held that "[i]n a bench trial, [motions in limine] are unnecessary, as the Court can and does readily exclude from its consideration inappropriate evidence of whatever ilk." *Cramer v. Sabine Transp. Co.*, 141 F. Supp. 2d 727, 733 (S.D. Tex. 2001). Nevertheless, motions in limine can be a useful tool in streamlining the case and providing "a valuable aid to the Court when deciding the competence of the evidence presented." *Ams. United for Separation of Church & State v. Prison Fellowship Ministries*, 395 F. Supp. 2d 805, 807 (S.D. Iowa 2005); *see also Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997) (explaining that "the motion in limine is an important tool available to the trial judge to ensure the expeditious and evenhanded management of the trial proceedings"). Additionally, motions in limine are an important tool for the parties in preparation for their trials, so that they are not expending unnecessary resources and time in preparing for witnesses or evidence that may be limited or excluded from trial. *Cf.* Fed. R. Civ. P. 1 ("[T]he court and the parties [should attempt] to secure the just, speedy, and inexpensive determination of every action and proceeding.").

nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling.").

### III. ANALYSIS

#### A. Testimony of Rhonda Tyler and Pastor Robert Taylor

The United States contends that "[n]either of these witnesses . . . will be able to add any factual testimony other than that which [Mr. Tyler] will testify to himself" and moves under Federal Rules of Evidence 401, 403, 602, 611(a)(2), 801, and 802 to preclude their testimony at trial. Motion at 5–6. The United States asserts that neither Mrs. Tyler nor Pastor Taylor has any personal knowledge of Mr. Tyler's own emotional distress and pain, that any testimony they would offer would be cumulative of Mr. Tyler's and a waste of the Court's time, and that their testimony would be mostly composed of hearsay, with the witnesses stating what Mr. Tyler told them about his distress and pain. *See id.* Finally, the United States contends that Mrs. Tyler did not accompany her husband to his VA appointments and Mr. Tyler failed to identify marital consortium-type harm in discovery; thus, Mrs. Tyler's testimony on such specific matters should be barred under Federal Rule of Civil Procedure 37(c)(1). *See id.* at 6–7.

Mr. Tyler responds that he gave the United States proper notice that both witnesses would be called to testify at trial. Response at 1. He further asserts that his wife is competent to testify about her personal observations of her husband "as he dealt with the trauma, embarrassment, and physical injuries resulting from the May 8, 2018 event." *Id.* at 2. He maintains that his pastor's anticipated testimony goes to his personal observations of Mr. Tyler as he provided Mr. Tyler with spiritual support. *Id.* Finally, he

contends that the United States did not depose either witness and is simply speculating about what each witness will say. *Id*.

### (1)   *Need for Personal Knowledge and Hearsay Considerations*

Federal Rule of Evidence 602 requires that a testifying witness "ha[ve] personal knowledge of the matter" of which he or she is testifying. Fed. R. Evid. 602. "Evidence to prove personal knowledge may consist of the witness's own testimony." *Id*. "[A] witness who testifies to a fact which can be perceived by the senses must have had an opportunity to observe, and must have actually observed the fact . . . ." *See* Fed. R. Evid. 602 advisory committee's note to 1972 proposed rules. The Tenth Circuit has explained that this is not a difficult standard to meet, and a trial court "should exclude testimony for lack of personal knowledge 'only if in the proper exercise of the trial court's discretion it finds that the witness could not have actually perceived or observed that which he testifies to.'" *See United States v. Gutierrez de Lopez*, 761 F.3d 1123, 1132 (10th Cir. 2014) (quoting *United States v. Sinclair*, 109 F.3d 1527, 1536 (10th Cir. 1997)).

Thus, assuming the foundational testimony establishes that Mrs. Tyler and Pastor Taylor possess firsthand knowledge of the fact she or he proposes to testify about, then their observations of the emotional distress and pain suffered by Mr. Tyler would be admissible under Rule 602. For example, if Mr. Tyler seeks to offer evidence through Pastor Taylor that he sought counseling from his pastor because of the May 8 incident, then Pastor Taylor's testimony would be limited to his observations of Mr. Tyler and the fact that Mr. Tyler underwent counseling. Likewise, Mrs. Tyler could testify about her observations of Mr. Tyler as they relate to his pain and suffering, but she would be

6

precluded from testifying about the treatment Mr. Tyler sought and received at the VA if she did not attend the appointments and her basis for her knowledge is not based on her own observations and was obtained through communications with her husband. Both witnesses would be precluded from testifying as to matters which they did not see, hear, or do themselves. *See* Fed. R. Evid. 602. Thus, the Court grants the Motion to the extent Plaintiff seeks for Mrs. Tyler or Pastor Taylor to testify about matters for which they lack firsthand knowledge.

However, the admissibility of statements Mr. Tyler made to his wife or Pastor Taylor would have to comply with the hearsay rule. *See Gutierrez de Lopez*, 761 F.3d at 1132 (explaining that a witness's testimony must comply with the hearsay rule if the witness only has personal knowledge of an out-of-court statement offered to prove the fact asserted in the statement, but not personal knowledge of the underlying fact); *see also* Fed. R. Evid. 602 advisory committee's note to 1972 proposed rules (observing that Rule 602 "does not govern the situation of a witness who testifies to a hearsay statement as such, if he has personal knowledge of the making of the statement" because the rules governing hearsay "would be applicable"). Under Federal Rule of Evidence 802, "hearsay" is admissible only if permitted by "a federal statute," an exception in the Federal Rules of Evidence, or "other rules prescribed by the Supreme Court." Fed. R. Evid. 802. The Federal Rules define "hearsay" as an out-of-court statement offered "to prove the truth of the matter asserted." Fed. R. Evid. 801(c)(2). A "statement" is defined as "a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion." Fed. R. Evid. 801(a).

Notably, Rule 801(d)(2) permits testimony of an opponent's out-of-court statements, but it does not condone admission of the party's own out-of-court statements. *See* Fed. R. Evid. 801(d)(2). However, such statements could be admissible under Rule 803. For example, Rule 803(3) permits statements to demonstrate "the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health) . . . ." Fed. R. Evid. 803(3). Thus, statements Mr. Tyler made to describe his current state of emotional distress to his wife or pastor might constitute an exception to the hearsay rule. However, because the Court does not know exactly how Mrs. Tyler or Pastor Taylor will testify, it cannot rule at this time except to say, generally, that Mr. Tyler's statements to his wife and pastor about what he saw or heard would constitute hearsay.

Thus, the Court reserves ruling on the specifics of Mrs. Tyler's and Pastor Taylor's testimony until it hears the testimony, but it offers these observations as guidance to counsel. But the Court cautions counsel that it does not envision lengthy testimony from either of these witnesses.

### (2)    *Cumulative Evidence Concerns*

The Tenth Circuit has defined cumulative evidence as "evidence which goes to prove what has already been established by other evidence." *United States v. Otuonye*, 995 F.3d 1191, 1208 (10th Cir. 2021) (internal quotation marks and citation omitted). In deciding whether to exclude evidence as cumulative, the trial judge has wide discretion. *See id.* The Tenth Circuit has suggested that, if the witnesses' testimonies are not "a total repeat" of each other, and the witnesses provide more detail or discuss topics not raised

8

by the other, the testimony is not cumulative. *See United States v. Archuleta*, 737 F.3d 1287, 1292–93 (10th Cir. 2013).

The Court is mindful that there is at least some potential for this testimony to become cumulative and, therefore, Mr. Tyler and his counsel are cautioned to make efforts to minimize such cumulative testimony during trial.[5] However, the Court will defer its rulings on relevance and unfair prejudice objections under Rules 401, 403, and 611(a)(2) until trial when the factual backdrop is developed. *See Richardson v. Mo. Pac. R.R. Co.*, 186 F.3d 1273, 1276 (10th Cir. 1999); *Wheatridge Off., LLC v. Auto-Owners Ins. Co.*, 578 F. Supp. 3d 1187, 1201 (D. Colo. 2022); *Wilkins v. Kmart Corp.*, 487 F. Supp. 2d 1216, 1218–19 (D. Kan. 2007). Specific objections based on relevance and undue prejudice, including whether such evidence is cumulative and a waste of the Court's time, should be asserted by the parties at trial as appropriate.

### (3) *Loss of Marital Consortium*

Under Federal Rule of Civil Procedure 37(c)(1), a party who fails to provide information or identify a witness as required by Rule 26(a) or (e) cannot "use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Determining if a Rule 26(a)

---

[5] *Contra United States v. McFadden*, 116 F.4th 1069, 1108 n.10 (10th Cir. 2024) (Federico, J., dissenting in part) (quoting *United States v. W.B.*, 452 F.3d 1002, 1006 (8th Cir. 2006) ("The district court conducted a bench trial and in such a situation, we find little prejudice in the admission of cumulative evidence or testimony which improperly bolsters a prior witness.")). With that said, the parties should keep in mind that this is a bench trial on a single claim, and they should work to streamline their evidentiary presentations and focus on what is essential evidence for the asserted claim elements and asserted defense, considering limited judicial resources.

violation is justified or harmless is left to the district court's broad discretion. *See Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999). Although a district court need not make explicit findings regarding whether the non-disclosure was substantially justified or harmless, the following factors should guide its discretion: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *See id.*

Although Mr. Tyler noticed his wife as a witness in his discovery responses, in his Final Witness and Exhibit List, and in the Final Pretrial Report, he does not allege a loss of consortium claim in his Second Amended Complaint, nor is there any indication from his summary of his wife's anticipated testimony that he seeks damages for marital consortium-type harm. *See* [Doc. Nos. 23, 85-1 at 11–12, 48 at 3, and 80 at 11]. Further, Mr. Tyler does not respond to the United States' argument that because he failed to identify consortium-type harm in discovery, Mrs. Tyler's testimony on such subject should be barred under Rule 37(c)(1). *See* Motion at 6–7; *see also* Response generally. Nor does he argue that his failure is substantially justified or harmless or address the factors identified by the Tenth Circuit in *Woodworker's Supply*.[6]

---

[6] Mr. Tyler has therefore forfeited any arguments regarding the evidence being barred under Rule 37(c)(1). *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1128 (10th Cir. 2011) (explaining that if a "theory simply wasn't raised before the district court, we usually hold it forfeited").

Mr. Tyler submits that "it is speculative at best whether [the United States] has substantial grounds for its motion in limine" given that the government elected not to depose Mrs. Tyler. Response at 2. In deciding whether to depose Mrs. Tyler, however, the United States ought to be able to rely on the representations Mr. Tyler and his counsel made in discovery responses and in his Final Witness and Exhibit List. The Court agrees with the United States that there has been no indication that Mrs. Tyler would testify as to consortium-type harm or that loss of consortium is being sought. Further, discovery closed on June 10, 2022, and there is no time to depose Mrs. Tyler now before trial. *See* [Doc. No. 42 at 2]. Thus, Mrs. Tyler is barred from testifying about loss of marital consortium under Federal Rule of Civil Procedure 37(c)(1).

### B.    Testimony of Dr. Bautista-Gutierre

The United States seeks to limit the testimony of Dr. Bautista-Gutierre to lay testimony as Mr. Tyler did not notice her as an expert under Federal Rule of Civil Procedure 26(a). Motion at 2. Additionally, the United States contends that "her proposed testimony is quintessentially expert testimony" and should have been disclosed under Rule 26(a)(2)(C) and the Court's Scheduling Order. *See id.* at 8. Finally, the United States asserts that Dr. Bautista-Gutierre's lay testimony will be cumulative of Mr. Tyler's testimony. *See id.* at 11.

In response, Mr. Tyler asserts that he "made it clear" in the parties' motion in limine conference "that Dr. Bautista-Gutierre was testifying as a fact witness, although she served as [his] treating physician." Response at 3. Mr. Tyler asserts that, if permitted to testify, Dr. Bautista-Gutierre will testify as to her Zoom visits with Mr. Tyler, which

11

she recommended because Mr. Tyler feared returning to the VA hospital after the May 8, 2018 incident with VA police. *See id.* He argues that fear is an emotion observable to a lay witness, and that Dr. Bautista-Gutierre can testify to such without stepping into expert territory. *See id.*

Federal Rule of Evidence 701 governs a treating physician's lay testimony. *See* Fed. R. Evid. 701. Under Rule 701, a lay witness's testimony "in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Rule 701 was amended in 2000 "to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing." *See* Fed. R. Evid. 701 advisory committee's note to 2000 amendments. "[T]he amendment also ensures that a party will not evade the expert witness disclosure requirements set forth in Fed. R. Civ. P. 26 . . . by simply calling an expert witness in the guise of a layperson." *See id.*

Under the amended Rule 701, "a treating physician who has not been identified as an expert witness pursuant to Rule 26(a)(2) may not provide testimony beyond the scope of her treatment of [the] plaintiff, and [the physician's] conclusions must fall within the province of a lay witness." *Parker v. Cent. Kan. Med. Ctr.*, 57 F. App'x 401, 404 (10th Cir. 2003) (unpublished) (internal quotation marks and citation omitted). Notably, "[t]here is some gray area between lay and expert testimony when the lay witness has

12

expertise and used that expertise to make first-hand observations." *Travelers Prop. Cas. Co. of Am. v. Ocean Reef Charters LLC*, 71 F.4th 894, 907 n.9 (11th Cir. 2023).

"Rule 701 'does not permit a lay witness to express an opinion as to matters which are beyond the realm of common experience and which require the special skill and knowledge of an expert witness.'" *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1214 (10th Cir. 2011) (quoting *Randolph v. Collectramatic, Inc.*, 590 F.2d 844, 846 (10th Cir. 1979)). Following the amendment of Rule 701, a treating physician testifying as a lay witness cannot offer medical opinions on causation since such opinions require "knowledge derived from previous professional experience," which fall "squarely within the scope of Rule 702 and thus by definition outside of Rule 701." *Id.* at 1215 (brackets omitted) (quoting *United States v. Smith*, 640 F.3d 358, 365 (D.C. Cir. 2011)).

Diagnosing a medical condition generally requires judgment based on scientific, technical, or specialized knowledge; thus, a treating physician's opinions as to same are usually expert testimony. Nevertheless, there could be cases where a diagnosis is lay testimony because it is within the province of the ordinary person or requires limited expertise. *See id.* at 1214 (explaining that Rule 701 "allows lay witnesses to offer observations that are common enough and require . . . a limited amount of expertise") (internal quotation marks and citation omitted); *see also United States v. Henderson*, 409 F.3d 1293, 1300 (11th Cir. 2005) (noting that the treating physician's diagnosis that the victim's jaw was fractured was permissible lay testimony, but her statement about what caused the injury was not). The plain language of Rule 701(c), however, prohibits lay opinion testimony that is "based on scientific, technical, or other specialized knowledge

13

within the scope of Rule 702." Fed. R. Evid. 701. Thus, as differentiated by the Eleventh Circuit, a diagnosis that requires "more complex diagnostic reasoning than that required to notice a broken jaw may fall under Rule 701(c)'s prohibition." *Travelers Prop. Cas. Co. of Am.*, 71 F.4th at 907 n.9.

The United States asserts that because Mr. Tyler interacted with Dr. Bautista-Gutierre both before and after the incident, her anticipated testimony "is quintessentially expert testimony." Motion at 8. The United States contends that her testimony "will necessarily involve alleged causation" because any discussion of her assessment and treatment of Mr. Tyler will require a clinical comparison of his prior psychiatric issues with his post-May 8, 2018 issues and treatment. *See id.*

Under the confines of Rule 701, Dr. Bautista-Gutierre, as Mr. Tyler's treating physician, may testify as to her observations of Mr. Tyler both before and after the incident, including any relevant examinations she may have performed, diagnostic testing she may have ordered, related history she may have recorded, and simple conclusions she would have reached that would be obvious to a layperson, but she would be precluded from opining as to the causation of his ailments or injuries.[7] Mr. Tyler notices in the Final Pretrial Report that Dr. Bautista-Gutierre will testify: "to injuries [Mr. Tyler] sustained at

---

[7] For example, a treating physician may testify that her patient was coughing and running a fever because this is permissible lay witness testimony under Rule 701, but she would be precluded from testifying that she diagnosed the patient with Reactive Airways Dysfunction Syndrome caused by exposure to toxic chemicals because such testimony would be based on scientific, technical, or other specialized knowledge. *See Travelers Prop. Cas. Co. of Am.*, 71 F.4th at 907 n.9.

14

the hands of VA police"; that Mr. Tyler "fear[ed] attending his medical appointments at the VA due to continuous staring by police officers involved in the incident"; and that she allowed Mr. Tyler "to treat via Zoom" as a result of his fears. [Doc. No. 80 at 11]. The Court agrees with the United States that this anticipated testimony treads closely to causation. Dr. Bautista-Gutierre is prohibited from opining or testifying on what injuries Mr. Tyler sustained at the hands of VA police or that the VA police caused any injuries.[8] She may, however, testify to the facts and circumstances of Mr. Tyler's treatment. Further, the Court will not allow Dr. Bautista-Gutierre to testify as to any future projections regarding Mr. Tyler's mental or physical state, nor can she rely on other physician's reports or testify as to hypotheticals since she is testifying as a lay witness.

    The same concerns regarding hearsay noted in the analysis above would apply to Dr. Bautista-Gutierre's testimony. Statements Mr. Tyler made to Dr. Bautista-Gutierre would have to comply with the hearsay rule. It might be that some of Mr. Tyler's statements to her would be admissible as an exception to hearsay under Federal Rule of

---

[8] Other district courts within the circuit have concluded that treating physicians who are not timely disclosed as experts may not testify about causation. *See, e.g.*, *Montoya v. Sheldon*, 286 F.R.D. 602, 620 (D.N.M. 2012) (concluding that the plaintiff's treating physician could testify as a lay witness to the facts and circumstances of the plaintiff's treatment but could not testify that the defendants' alleged unconstitutional conduct caused plaintiff's mental condition because such testimony must be qualified as expert testimony under Rule 702 and because mental disorders are complicated and beyond a lay witness' realm of experience); *Walker v. Spina*, No. CIV 17-0991 JB/SCY, 2019 WL 145626, at *22 (D.N.M. Jan. 9, 2019) (explaining that the court would follow *Montoya* and would "exclude testimony from treating physicians on complicated diagnoses, prognoses, and causation").

Evidence 803(4), as statements made for medical diagnosis or treatment, or some other exception, but the Court will reserve any rulings on hearsay.

The Court cautions Mr. Tyler and his counsel to explain to Dr. Bautista-Gutierre the parameters on her lay opinion testimony as set out by the Court. The United States may reassert its cumulative objection at trial, and the Court will take it up during the presentation of evidence.

## IV. **CONCLUSION**

For these reasons, the Court GRANTS IN PART, DENIES IN PART, and RESERVES IN PART the United States' Motion in Limine [Doc. No. 78]. Specifically, the Court grants the Motion to the extent the testimony of Mrs. Tyler and Pastor Taylor is limited to their firsthand knowledge and observations and to the extent Mrs. Tyler is precluded from testimony on loss of consortium. The Court reserves ruling on other specific aspects of their testimony until trial when the factual backdrop is developed. The Court grants the Motion to the extent it seeks to limit the testimony of Dr. Bautista-Gutierre to the confines of Rule 701, and Dr. Bautista-Gutierre is prohibited from testifying as to causation of Mr. Tyler's alleged injuries. Otherwise, the Court denies the Motion to the extent the United States sought to exclude Dr. Bautista-Gutierre's testimony fully. The parties shall inform witnesses of the Court's rulings.

IT IS SO ORDERED this 6th day of January 2025.

JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE