IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CLARENCE MADISON TYLER, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES OF AMERICA, ) <br> ) <br> Defendant. ) | Case No. CIV-19-01102-JD |

**ORDER**

Before the Court is Plaintiff Clarence Madison Tyler's Motion in Limine ("Motion") [Doc. No. 79]. The United States responded in opposition ("Response") [Doc. No. 83]. Mr. Tyler seeks to limit the testimony of three witnesses—Dr. Audra Yadack, David Castoe, and Kelly D. Bales, II—to their personal knowledge surrounding the incident of May 8, 2018, asserting that testimony outside of this is vague, subject to hearsay, not relevant, and more prejudicial than probative. For the reasons stated below, the Court grants in part and denies in part the Motion.

**I.    BACKGROUND**

Mr. Tyler's assault and battery claim (Count 1) brought under the Federal Tort Claims Act ("FTCA") is the sole claim remaining for bench trial.[1] This FTCA case stems from Mr. Tyler's arrest by law enforcement officers on May 8, 2018, at the Oklahoma City VA Medical Center ("VAMC").

---

[1] There is no right to a jury trial under the FTCA. *See* 28 U.S.C. § 2402; *United States v. Neustadt*, 366 U.S. 696, 701 n.10 (1961).

VAMC officers were transporting Ronald Moore, a patient, on a gurney into an elevator when Mr. Tyler, who was at the facility for his own medical care, attempted to intervene with the transport. As a result, Mr. Tyler was arrested. Mr. Tyler asserts that VAMC officers used excessive force in effectuating his arrest. The United States concedes that VAMC officers used force in arresting Mr. Tyler but contends that the force used was reasonably necessary under the circumstances to accomplish the arrest, citing Okla Stat. tit. 21, § 643 as an affirmative defense to Mr. Tyler's civil assault and battery claim.[2] *See* Government's Trial Br. [Doc. No. 81] at 9–17.

The United States intends to call Dr. Yadack, a former staff psychiatrist at the VAMC, to testify as to "[h]er interactions with and treatment of Mr. Moore." [Doc. No. 80 at 13]. Mr. Moore "was the object of the panic alarm to which the VAMC police officers were responding when [Mr. Tyler] interfered." Response at 1. Dr. Yadack was the staff psychiatrist on call on May 8, 2018, and as the Court understands it, she interacted with Mr. Moore on that date. *See id.* It is unclear from the briefing of record whether Dr. Yadack treated Mr. Moore on other occasions. Additionally, the United States intends to

---

[2] "To use or to attempt to offer to use force or violence upon or toward the person of another is not unlawful . . . [w]hen necessarily committed by a public officer in the performance of any legal duty, or by any other person assisting such officer or acting by such officer's direction; [w]hen necessarily committed by any person in arresting one who has committed any felony"; and "[w]hen committed either by the person about to be injured, or by any other person in such person's aid or defense, in preventing or attempting to prevent an offense against such person . . . provided the force or violence used is not more than sufficient to prevent such offense." Okla. Stat. tit. 21, § 643(1), (2), and (3). The Oklahoma Supreme Court has "held that the provisions of § 643 afford a defense to a civil claim for assault and battery." *Morales v. City of Okla. City ex rel. Okla. City Police Dep't*, 230 P.3d 869, 877 n.28 (Okla. 2010) (citing *Boston v. Muncy*, 233 P.2d 300, 302 (1951)).

call Mr. Castoe, former chief of police at the VAMC, and Mr. Bales, a former VAMC criminal investigator, to testify as to their knowledge and interactions with Mr. Tyler and the events described in the Second Amended Complaint. [Doc. No. 80 at 13–14]. Mr. Castoe was the VAMC chief of police on May 8, 2018. Response at 4.

The Court's previous Order addressing the United States' motion in limine [Doc. No. 98] sets forth the applicable legal standards for in limine rulings, and the Court incorporates them herein by reference.

## II.     ANALYSIS

### A.     Testimony of Dr. Audra Yadack

Mr. Tyler asserts that evidence relating to Mr. Moore's past mental health treatment is not relevant and seeks to limit Dr. Yadack's testimony to her personal knowledge of the events of May 8, 2018. Motion at 2–4. In response, the United States contends that Dr. Yadack "is a percipient witness of Mr. Moore, and her testimony is relevant to establish Mr. Moore's state of mind on May 8, 2018," and to show "why timely and uninterrupted transport to the Emergency Department was critical." Response at 1–2. Additionally, the United States asserts that Dr. Yadack's testimony is "relevant as the Court considers and weighs the credibility of Mr. Moore's previous testimony [from Mr. Tyler's] criminal trial."[3] Response at 2.

Following the filing of the Motion, the United States offered two factual stipulations in lieu of calling Dr. Yadack as a witness. *See id.* The stipulations come

---

[3] Mr. Moore is deceased, and Mr. Tyler intends to offer Mr. Moore's previous sworn testimony in his case-in-chief. *See* [Doc. No. 80 at 10].

3

directly from Mr. Moore's VAMC records: (1) Mr. Moore "was involuntarily admitted to the [VAMC] on May 8, 2018, because he was 'unable to maintain safety due to current mental status'"; and (2) Mr. Moore "was involuntarily admitted to the [VAMC] on May 8, 2018, based on a diagnosis of 'MDD,[4] with Psychotic features.'" *Id.* The United States represents that "[d]espite stipulating to the admission of medical records that report those very assertions, [Mr. Tyler] declined to stipulate to [the above] facts."[5] Response at 2 (emphasis omitted). Rather, Mr. Tyler, through counsel, "communicated a desire to cross-examine Dr. Yadack as to the substance of the stipulations for further explanation." *See id.* at 3. Mr. Tyler argues that Dr. Yadack's testimony outside her personal knowledge surrounding the May 8 incident is vague, subject to hearsay, not relevant, and is more prejudicial than probative. Mr. Tyler, however, does not explain what is vague about Dr. Yadack's anticipated testimony nor identify any specific prejudice.

Here, the asserted claim is civil assault and battery under Oklahoma law.[6] In Oklahoma, "[a]n assault is any willful and unlawful attempt or offer with force or violence to do a corporal hurt to another." Okla. Stat. tit. 21, § 641. "A battery is any willful and unlawful use of force or violence upon the person of another." *Id.* § 642. The United States contends the VAMC officers' use of force was privileged because it was

---

[4] MDD stands for Major Depressive Disorder. *See* Response at 2 n.2.

[5] Mr. Moore's VAMC records are Joint Exhibit No. 13. *See* [Doc. No. 80-1 at 2].

[6] Under the FTCA, the United States is liable for certain torts committed by federal law enforcement, acting within the scope of their employment, to the same extent that Oklahoma law would make a private person liable. *See* 28 U.S.C. § 1346(b)(1); *see also Serrano v. United States*, 766 F. App'x 561, 570 (10th Cir. 2019) (unpublished).

reasonably necessary under Oklahoma law. *Id.* § 643; *see also Morales*, 230 P.3d at 877 n.28. The Oklahoma Supreme Court in *Morales* identified a non-exhaustive list of factors for courts to consider in evaluating the objective reasonableness of an officer's use of force in making an arrest. *See* 230 P.3d at 880. Such factors include: "(1) the severity of the crime of which the arrestee is suspected; (2) whether the suspect poses an immediate threat to the safety of the officers or others; (3) whether the suspect is actively resisting arrest or attempting to evade arrest; (4) the known character of the arrestee; (5) the existence of alternative methods of accomplishing the arrest; (6) the physical size, strength and weaponry of the officers compared to those of the suspect; and (7) the exigency of the moment." *See id.*; *see also id.* n.48 (indicating the review is a totality-of-the-circumstances evaluation). The first three factors are the same factors referenced by the United States Supreme Court in *Graham v. Connor* in determining whether the force used to carry out a seizure is reasonable under the Fourth Amendment. *See id.* n.48; *see also Graham v. Connor*, 490 U.S. 386, 396 (1989).

      The United States asserts that Mr. Tyler "interfered by veering off his intended course, demanding that VAMC police explain their actions, and keeping the elevator door from closing . . . to keep the officers from transporting [Mr. Moore]."[7] [Doc. No. 81 at 6–7]. "All the while, [Mr. Moore] continued kicking, screaming, and attempting to bite the officers." *Id.* at 7. The United States argues that Mr. Tyler's actions "caused unnecessary

---

[7] The United States also alleges that Mr. Tyler pulled on one officer's duty belt, which contained his officer-issued firearm, while the officer had his attention directed toward Mr. Moore. [Doc. No. 81 at 7, 14].

5

delay in [Mr. Moore's] medical care, escalated an already chaotic situation, and endangered the well-being of officers actively engaged in law enforcement business as well as numerous bystanders." *Id.*

As a percipient witness, i.e., one who has firsthand knowledge of an event through their senses, Dr. Yadack's testimony of her interactions with Mr. Moore on May 8, 2018, could be relevant to Mr. Moore's credibility, to providing context for the incident, and to some of the *Morales* factors identified above. *See Morales*, 230 P.3d at 880 (explaining that among the factors to be evaluated are "whether the suspect poses an immediate threat to the safety of the officers or others" and "the exigency of the moment"). Dr. Yadack's testimony could provide context as to Mr. Moore's state of mind at the time of his involuntary admission to the VAMC, and it could be relevant to show why VAMC officers took the actions they did on May 8, 2018. It could also be relevant to whether Mr. Tyler posed an immediate threat to the safety of the officers and others given Mr. Moore's state at the time of the incident on May 8, 2018, and the exigency of the moment. It is important to note that the Court must examine the officers' actions under a totality-of-the-circumstances lens to determine whether their actions were necessary and reasonable. Mr. Moore is deceased, and Mr. Tyler intends to offer Mr. Moore's previous sworn testimony in his case-in-chief. Thus, Dr. Yadack's testimony could also discredit Mr. Moore's testimony, and to that end, it would be relevant as the Court considers and weighs Mr. Moore's previous testimony.

The United States, however, does not address Mr. Tyler's argument as to the relevance of Mr. Moore's past mental health treatment in terms of Dr. Yadack's

6

testimony. *See* Motion at 3. It appears Mr. Moore's past mental health treatment would be included in the parties' Joint Exhibit No. 13, and if admitted, the Court would have the benefit of those records. Yet, it is unclear to the Court if Dr. Yadack treated Mr. Moore prior to May 8, 2018. Dr. Yadack has not been noticed by either side as an expert; thus, her testimony "in the form of an opinion is limited" under Federal Rule of Evidence 701, and she cannot provide testimony beyond the scope of her treatment of Mr. Moore. Moreover, the Court struggles to see the relevance of Mr. Moore's past mental health treatment to the asserted claim elements and asserted defenses in this case.[8] It might bear on Mr. Moore's credibility, but the United States would have to lay foundational testimony to admit such testimony through Dr. Yadack, and as a lay witness, Dr. Yadack's testimony would be limited to the confines of Rule 701.

Given that Mr. Tyler plans to question Dr. Yadack as to the reason Mr. Moore was admitted on May 8 and has declined to stipulate regarding same, the Court does not see any prejudice at this time in admitting Dr. Yadack's testimony in terms of her treatment of Mr. Moore on May 8, subject to a specific and appropriate objection at trial. Nor does Mr. Tyler identify any specific prejudice or explain what is vague about her anticipated

---

[8] There is no evidence of record that the officers involved knew Mr. Moore or had prior interactions with Mr. Moore. If there is such evidence, then evidence of Mr. Moore's past mental health treatment might be relevant in examining the reasonableness of the officers' actions in terms of gauging the exigency of the situation. Proper foundational testimony would have to be laid. With that said, the parties should keep in mind that this is a bench trial on a single claim, and they should work to streamline their evidentiary presentations and focus on what is only essential evidence for the asserted claim elements and asserted defenses, considering limited judicial resources. Stipulations by the parties and limiting the number of witnesses are encouraged.

testimony. "Applying Rule 403 to determine if evidence is prejudicial . . . requires a fact-intensive, context-specific inquiry," *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 388 (2008), and is normally "done against the backdrop of the actual evidence at trial," *Richardson v. Missouri Pac. R.R. Co.*, 186 F.3d 1273, 1276 (10th Cir. 1999).

Additionally, Mr. Tyler asserts that Dr. Yadack's testimony "could be subject to hearsay," but he does not identify any specific hearsay implications. Motion at 2. Several exceptions to the hearsay rule could apply here. *See, e.g.*, Fed. R. Evid. 803(1) (present sense impression); 803(2) (excited utterance); 803(3) (then-existing mental, emotional, or physical condition); 803(4) (statement made for medical diagnosis or treatment); and 803(6) (records of a regularly conducted activity). The Court declines to issue preliminary rulings on hearsay objections absent a statement of the specific ground for such objection. "A timely objection, accompanied by a statement of the specific ground of the objection, must be made when evidence is offered at trial . . . ." *United States v. Norman T.*, 129 F.3d 1099, 1106 (10th Cir. 1997). The Court directs the parties to confer before the bench trial regarding authenticity of exhibits.[9]

---

[9] Mr. Moore's medical records are offered as a joint exhibit by the parties, and the government indicates it will have a witness present who can authenticate the records should Mr. Tyler challenge their authenticity. *See* [Doc. Nos. 80 at 14 and 80-1 at 2]. Despite the records being a joint exhibit, the United States raised a concern that Mr. Tyler may challenge their accuracy because he had "communicated a desire to cross-examine Dr. Yadack as to the substance of the stipulations for further explanation." Response at 3. These are issues that can and should be resolved before trial, and the parties shall work together to stipulate to the admissibility and authenticity of documents before trial to avoid wasting judicial resources.

Thus, the Court grants the Motion to the extent it seeks to limit Dr. Yadack's testimony to her personal knowledge surrounding the incident of May 8, 2018, absent foundational testimony she treated Mr. Moore on other occasions and other evidence demonstrating the relevance of Mr. Moore's past mental health treatment to the asserted claim elements or asserted defenses in this case. The Court denies the Motion to the extent it seeks preliminary rulings on prejudice or hearsay without specific grounds for objection.

### B.    Testimony of David Castoe and Kelly Bales

Mr. Tyler asserts that Mr. Castoe's and Mr. Bales' knowledge of Mr. Tyler from several years back has no connection or relevance to the May 8, 2018 incident, and that their testimony should be limited to their personal knowledge surrounding the events of May 8. Motion at 2. Additionally, he asserts that their testimony "is not relevant, could be subject to hearsay, and is vague." *See id.*

In response, the United States notes that Mr. Tyler fails to state specifically what testimony he seeks to exclude, but it presumes Mr. Tyler is referring to "his previous antagonistic clashes with VAMC police officers." Response at 4. The United States explains that Mr. Tyler has a history of threatening VAMC police officers, and that his previous interactions with VAMC police are relevant to show (1) Mr. Tyler's motivation and intent to intervene on May 8, along with his dislike of the VAMC police, and (2) that he knew it was VAMC police officers inside the elevator on May 8 transporting Mr. Moore, thereby impeaching Mr. Tyler's prior testimony on the subject. Response at 4–5. Additionally, the United States asserts that Castoe and Bales can provide relevant

9

testimony regarding VAMC police officer training and policies, and that Mr. Bales' testimony is necessary to authenticate excerpts of the videos Mr. Tyler now challenges. *See id.* at 5.

To the extent the VAMC police officers who were personally involved in Mr. Tyler's arrest on May 8 had prior knowledge of Mr. Tyler's previous clashes with VAMC police officers, then Mr. Castoe's and Mr. Bales' testimony regarding same could be relevant to the *Morales* factors identified above and whether the specific officers involved used reasonable force in effectuating Mr. Tyler's arrest.[10] Specifically, such testimony would be applicable to the fourth factor, i.e., "the known character of the arrestee." *Morales*, 230 P.3d at 880. It may be relevant to discredit Mr. Tyler's previous sworn testimony. However, neither party has presented for the Court what these "previous antagonistic clashes with VAMC police officers" are or what they entailed. Thus, the Court denies the Motion to the extent it seeks to exclude or limit the testimony of Mr. Castoe and Mr. Bales absent an appropriate and specific objection at trial.

### III. CONCLUSION

For these reasons, the Court GRANTS IN PART and DENIES IN PART Plaintiff Clarence Madison Tyler's Motion in Limine [Doc. No. 79]. Specifically, the Court grants the Motion to the extent it seeks to limit Dr. Yadack's testimony to her personal

---

[10] It is unclear to the Court whether Mr. Castoe and Mr. Bales were personally involved with Mr. Tyler on the date of his May 8, 2018 arrest, although Mr. Castoe was the VAMC chief of police on the date in question and would presumably have knowledge of the events. Thus, the United States would have to lay the proper foundation to show that the specific officers involved knew of Mr. Tyler and knew of his prior issues with VAMC police.

knowledge surrounding the incident of May 8, 2018, absent foundational testimony she treated Mr. Moore on other occasions and other evidence demonstrating the relevance of Mr. Moore's past mental health treatment to the asserted claim elements or asserted defenses in this case. The Court denies the Motion to the extent it seeks preliminary rulings on prejudice or hearsay without specific grounds for objection and to the extent it seeks to exclude or limit Mr. Castoe's and Mr. Bales' testimony absent an appropriate and specific objection at trial.

    IT IS SO ORDERED this 6th day of January 2025.

_____
JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE